IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-cv-112-JTA |
| | ) | (WO) |
| ALATRADE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss (Doc. No. 7) filed by Defendant Alatrade, Inc. For the reasons stated below, the motion is due to be DENIED.

**I.   Jurisdiction**

Pursuant to 28 U.S.C. § 1331, this Court exercises subject matter jurisdiction over Plaintiff's claims, which arise under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. ("ADEA"). The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

**II.   Procedural History**

On March 4, 2022, Plaintiff John Mullins filed a Complaint against AlaTrade, Inc., alleging a single count of age discrimination in violation of the ADEA. (Doc. No. 1.)

On May 16, 2022, Defendant filed its motion to dismiss. (Doc. No. 7.) On the same day, Defendant filed a motion to stay the case until the Court ruled on the motion to dismiss. (Doc. No. 9.)

On June 1, 2022, Plaintiff timely filed responses in opposition to Defendant's motion to stay and motion to dismiss. (Docs. No. 12, 13.)

On June 8, 2022, Defendant timely filed a reply in support of the motion to dismiss. (Doc. No. 16.)

On January 4, 2023, the Court entered an Order granting Defendant's motion to stay pending a ruling on the motion to dismiss. (Doc. No. 17.)

The motion to dismiss is ripe for disposition.

**III.  Standard of Review**

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). While Federal Rule of Civil

Procedure 8(a) "does not require 'detailed factual allegations' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint is insufficient if it "offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or if it "tenders naked assertions devoid of further factual enhancement." *Id*. (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). In short, a complaint must provide a "'plain statement possess[ing]' enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (internal quotations omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. Plaintiff's Allegations[1]

In May 2021, Defendant hired Plaintiff to work at its poultry processing plant in Phenix City, Alabama. (Doc. No. 1 at ¶¶ 4, 6, 17.) At that time, he was approximately[2] sixty-nine years old. When Plaintiff began his employment, he was assigned to wipe condensation from doors to prevent accidents from happening. (*Id*. at ¶ 7.) He worked between forty and forty-eight hours per week. (*Id*.)

On a Saturday in July 2021, Plaintiff went to the emergency room for pain in his hip. (*Id.* at ¶ 9.) Defendant contends that Plaintiff's supervisor, Denise Taylor, who was

---

[1] The facts and allegations set forth here are taken from Plaintiff's Complaint and supporting exhibits attached thereto. (Docs. No. 1, 1-1.)

[2] Plaintiff's Complaint, which was filed in March 2022, states that Plaintiff "*is* a sixty[-] nine (69) year old man who started working with Defendant in May 2021." (Doc. No. 1 at ¶ 6 (emphasis added).) In Plaintiff's EEOC charge, his date of birth is listed simply as "1951." (Doc. No. 1-1 at 1.) While the Complaint is imprecise as to Plaintiff's exact age at the time of the events in question, the allegations in the Complaint establish that Plaintiff was at least sixty-eight years old and not older than seventy years old at the time of the alleged discrimination.

the plant superintendent at the time, noticed Plaintiff appeared to be in significant pain, was "bent at the waist," and was having difficulty standing and walking. (*Id*. at ¶ 11.) Superintendent Taylor likely contacted the plant nurse about her concern that Plaintiff was "bent at the waist." (*Id*. at ¶ 12.)

The following Monday, Plaintiff returned to work and presented the plant nurse, a woman younger than himself, with his medical diagnosis of arthritis of the hip joint. (*Id*. at 3.) The plant nurse instructed Plaintiff that he would not be allowed to return to duty until he provided additional medical information. (*Id.*) Defendant contends[3] that, "[t]o ensure [Plaintiff] was medically able to perform his specific job functions in light of his apparent pain and what appeared to be difficulty walking, and to ensure that the line on which [Plaintiff] was working would not be affected, [Defendant] asked [Plaintiff] to provide a more thorough Return to Work form, including his capacity to perform the essential duties in deboning." (*Id*. at ¶ 11.)

Plaintiff went back to the emergency room and obtained the requested additional medical information. (*Id.* at ¶ 13.) Nevertheless, the plant nurse refused to allow him to return to work on grounds that the information he provided was insufficient. (*Id.*) Plaintiff then obtained a return-to-work order from his primary care physician, which the nurse refused to accept; instead, the nurse "demanded Plaintiff get tested for lifting forty to one hundred pounds and bending." (*Id.* at ¶¶ 14-15.) Plaintiff completed the requested tests, and, on August 3, 2021, the nurse allowed Plaintiff to return to work. (*Id.* at ¶ 16.)

---

[3] According to the Complaint, Defendant raised this contention in response to Plaintiff's EEOC charge. (Doc. No. 1 at 11.)

On August 3, 2021, when Plaintiff returned to work, Superintendent Taylor reassigned him to a new location in the plant doing a new job working on the line processing chickens. (*Id.* at ¶ 17.) At some point that day, Plaintiff left the line and walked to the closest bathroom. (*Id.* at ¶ 18.) On his return to his new workstation, he was unsure of the fastest route back to his workstation, so he asked a co-worker to point him to the chicken-skinning area where he had been working. (*Id.* at ¶¶ 19-20.) Superintendent Taylor overheard Plaintiff requesting directions to his work area, and she instructed Plaintiff to follow her. (*Id.* at ¶ 21.) Plaintiff asked Superintendent Taylor why he was following her and where she was taking him; she replied that she "was taking him to see the nurse because" he was "lost and confused" and "she was not having him get hurt on the job." (*Id.* at ¶ 22; Doc. No. 1-1.) Plaintiff told Superintendent Taylor that he was not lost or confused; he just did not want to lose time getting back to his new workstation. (Doc. No. 1 at ¶ 25; Doc. No. 1-1.)

Superintendent Taylor took Plaintiff to the break room and asked him to sit down. (*Id.* at ¶ 26.) Plaintiff replied that he did not need to sit down; he was fine and wanted to get back to work. (*Id.* at ¶ 27.) Superintendent Taylor stated that she was going to call police, so Plaintiff sat down and was sitting down when a plant security guard arrived at Superintendent Taylor's request. (Doc. No. 1 at ¶ 28, 31; Doc. No. 1-1.) Superintendent Taylor wrote Plaintiff up for "insubordination," ostensibly for declining to sit down when instructed. (Doc. No. 1 at ¶ 30; Doc. No. 1-1.) Plaintiff was sent home with a three-day suspension. (Doc. No. 1 at ¶ 30; Doc. No. 1-1.)

Before the three-day suspension expired, Defendant terminated Plaintiff's employment. (Doc. No. 1 at ¶ 32; Doc. No. 1-1.) Defendant hired a "significantly younger employee" to replace Plaintiff. (Doc. No. 1 at 34.) But for Plaintiff's age, Defendant would not have terminated Plaintiff's employment. (*Id.* ¶ 33.)

Plaintiff filed his charge of discrimination on August 18, 2021, with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 3; Doc. No. 1-1.) Plaintiff filed his Complaint within 90 days of receipt of a right-to-sue letter from the EEOC. (Doc. No. 1 at ¶ 3.)

## V. Discussion

"The ADEA prohibits employers from discharging an employee who is at least [forty] years of age because of that employee's age." *Smith v. CH2M Hill, Inc.*, 521 F. App'x 773, 774 (11th Cir. 2013) (citing 29 U.S.C. §§ 623(a)(1), 631(a)); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 170 (2009) ("[T]he ADEA … makes it unlawful for an employer to take adverse action against an employee 'because of such individual's age.'" (quoting 29 U.S.C. § 623(a))). To prevail on his ADEA claim, Plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision" *Gross*, 557 U.S. at 177–78; *see also Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33, 1335-36 (11th Cir. 2013). "[A] 'but-for' cause requires a closer link than mere proximate causation; it requires that the proscribed animus have a determinative influence on the employer's adverse decision." *Sims*, 704 F.3d at 1335–36.

Plaintiff does not allege facts that, if proven, would constitute direct evidence of age discrimination. Plaintiff's case is, at most, a circumstantial one. The court will "ordinarily evaluate ADEA claims based on circumstantial evidence – like the claims involved in this case – under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Regina v. Weiss Gifted & Talented Sch., Inc.*, No. 21-11111, 2023 WL 116652, at *2 (11th Cir. Jan. 6, 2023) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)). However, the *McDonnell Douglas* "framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." *Sims*, 704 F.3d at 1333. Rather, "'the plaintiff will always survive summary judgment if [the plaintiff] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id*. (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). To establish a triable issue of discriminatory intent, the plaintiff must establish a record that, "viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Sims*, 704 F.3d at 1333.

Although the *McDonnell Douglas* framework is a tool for allocating "the burden of proof for summary judgment, it does not dictate the plaintiff's burden at the motion to dismiss stage because that framework is an evidentiary standard, not a pleading requirement."[4] *Jaffe v. Birmingham Gastroenterology Assocs., P.C.*, No. 2:20-CV-01821-

---

[4] Although Defendant acknowledges that Plaintiff need not allege facts sufficient to satisfy the *McDonnell Douglas* framework to overcome a motion to dismiss (Doc. No. 7 at 9-10), Defendant nevertheless suggests that *Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 F. App'x 704, 705 (11th Cir. 2013), requires Plaintiff to satisfy the *McDonnell Douglas' prima facie* case and to do so by

7

KOB, 2021 WL 4220356, at *2 (N.D. Ala. Sept. 16, 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)); *see also Thomas v. Auburn Univ.*, No. 3:21-CV-192-RAH-SMD, 2022 WL 428160, at *3 (M.D. Ala. Feb. 11, 2022) (collecting cases). "Consistent with *Twombly* and *Iqbal*, the focus at the motion to dismiss stage is whether the complaint 'plausibly suggest[s]'" that the plaintiff suffered an adverse employment action due to intentional discrimination. *Jaffe*, 2021 WL 4220356, at *2 (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)).

Though, to overcome the motion to dismiss, Plaintiff is not *required* to allege facts that if proven would meet the requirements of a *prima facie* case under the *McDonnell Douglas* framework, he certainly *may* state his claim in this way, and that is what he has chosen to do. After all, a *prima facie* case under *McDonnell Douglas* "creates a

---

demonstrating disparate treatment through pleading the existence of a similarly-situated comparator who was treated differently. (Doc. No. 16 at 1-4.) *Caraway*, an unpublished Eleventh Circuit opinion, did not overrule Supreme Court or previous Eleventh Circuit precedent by requiring satisfaction of the *prima facie* case in this way at the motion to dismiss stage, nor could it. Neither does *Caraway* hold that a plaintiff *must* satisfy that standard to overcome a motion to dismiss. *See id.* at 709 ("To establish the disparate treatment element of the prima facie case, a plaintiff *may* point to a similarly situated comparator who was not discriminated against." (emphasis added); *id.* at 710 ("Given that the amended complaint did not specifically allege the existence of a valid comparator *or otherwise allege facts giving rise to an inference of disparate treatment*, the plaintiffs failed to allege a valid ADEA claim." (emphasis added)). In *Caraway*, the complaint identified comparators who simply were not valid, similarly-situated comparators. Here, Plaintiff alleges that he was was "replaced … with a significantly younger employee" and that "other younger employees have engaged in the conduct Defendant alleges as the reason for terminating Plaintiff, but Defendant did not terminate those employees." (Doc. No. 1 at ¶¶ 38-39.) While not terribly detailed, Plaintiff's factual allegations are sufficient to state a claim at the motion to dismiss stage. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (observing "the fact that a replacement is substantially younger than the plaintiff is a … reliable indicator of age discrimination").

presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981); *see also Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (holding that a *prima facie* case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors"); *Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017) (noting that the *prima facie* case "creates a rebuttable presumption of discriminatory intent"); *Smith v. Healthcare Auth. for Baptist Health*, No. 2:20CV887-MHT, 2022 WL 857036, at *2 (M.D. Ala. Mar. 22, 2022) ("[T]he Supreme Court has repeatedly indicated that a *prima-facie* case raises an inference of discrimination."). Moreover, if the employer does not rebut the *prima facie* case at the summary judgment stage, the plaintiff is entitled to judgment in his favor. *Burdine*, 450 U.S. at 254. "Given that a plaintiff bringing a discrimination suit can prevail on the merits simply by establishing a *prima-facie* case …, it would not make sense to require [him] to plead anything more than a *prima-facie* case in order to proceed to the merits stage." *Baptist Health*, 2022 WL 857036, at *2 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see also Gidley v. Renaissance Montgomery Hotel & Spa*, No. 2:16-CV-01698-JHE, 2017 WL 3573817, at *2 (N.D. Ala. Aug. 17, 2017) (using "the *prima facie* elements as a point of reference" for considering a motion to dismiss, while acknowledging that the plaintiff was not required to plead the elements of a *prima facie* case to survive a motion to dismiss).

Plaintiff argues that the motion to dismiss is due to be denied because his Complaint alleges facts which, if believed, would establish a *prima facie* case under *McDonnell*

*Douglas*. Accordingly, the Court will consider whether Plaintiff's factual allegations are sufficient to allege that (1) he was a member of the protected class, *i.e.*, that he was over forty years old, *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641-42 (11th Cir. 2018) (citing 29 U.S.C. §§ 623(a)(1), 631(a)); "(2) []he was subjected to an adverse employment action; (3) []he was qualified to do the job; and (4) []he was replaced by or otherwise lost a position to a younger individual." *Id*. (citing *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012)).

Defendant does not contest that Plaintiff's complaint sufficiently alleges that he was in the protected class of workers (persons over forty years of age) at the time of the alleged discrimination.[5] (Doc. No. 7.) Defendant also does not contest that Plaintiff's complaint sufficiently alleges that he was subjected to an adverse employment action when Defendant terminated his employment. (*Id*.) Neither does Defendant argue that Plaintiff fails to adequately allege his qualifications for the job.[6] (*Id*.) Rather, Defendant argues that the Complaint fails to state a claim because Plaintiff does not argue that he "was replaced by an employee outside the protected class of 45 years of age or younger" and that Plaintiff fails to allege that the company nurse and Superintendent Taylor were "not also members of the protected class of workers (over the age of 45)." (Doc. No. 7 at 8, 10-12.)

---

[5] The Complaint sufficiently alleges that Plaintiff was over forty years old at the time of the discriminatory act. (Doc. No. 1 at ¶ 6 (alleging Plaintiff "is a sixty[-]nine (69) year old man"); Doc. No. 1-1 at 1 (listing Plaintiff's date of birth as "1951").)

[6] The Complaint adequately alleges that Plaintiff was qualified for the job. (Doc. No. 1 at ¶¶ 10, 13, 14, 16 (alleging that Plaintiff obtained medical documentation to show that he was medically qualified for the job, which the plant nurse ultimately accepted)).

10

Defendant's argument fails because Plaintiff does not have to allege or prove that he was replaced or subjected to discrimination by someone outside the protected age range, which, as Defendant recognizes elsewhere in its brief (Doc. No. 9 at 9), starts at forty years of age, not forty-five. 29 U.S.C. §§ 623(a)(1), 631(a); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). Contrary to Defendant's argument, to state a *prima facie* case of discrimination, Plaintiff need only allege that he was treated differently than or replaced by someone substantially younger. *O'Connor*, 517 U.S. at 312 ("The fact that one person in the protected class has lost out to another person in the protected class is … irrelevant, so long as he has lost out *because of his age*…. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." (emphasis in original)); *Kragor*, 702 F.3d at 1308; *McQueen v. Wells Fargo*, 573 F. App'x 836, 839 (11th Cir. 2014) ("Applying the *McDonnell Douglas* framework, the plaintiff can establish a prima facie case of age discrimination by showing, in part, that she was replaced by, or treated less favorably than, a substantially younger person.").

Plaintiff does adequately allege that he was "replaced … with a significantly younger employee." (Doc. No. 1 at ¶ 39.) Plaintiff also specifically alleges that "other younger employees have engaged in the conduct Defendant alleges as the reason for terminating Plaintiff, but Defendant did not terminate those employees." (Doc. No. 1 at ¶ 38.) While not very detailed, these allegations of fact are sufficient to "raise a right to relief above the speculative level on the assumption that," if the allegations are true, Plaintiff was replaced by a substantially younger individual and that discrimination was the

11

determinative cause of his termination. *Twombly*, 550 U.S. at 555 (internal citations omitted); *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (observing "the *fact* that a replacement is substantially younger than the plaintiff is a … reliable indicator of age discrimination" (emphasis added)); *Baptist Health*, 2022 WL 857036, at *3 ("It is not problematic, as Baptist Health suggests, that Smith does not allege the names, races, and ages of each of her replacements. Smith's allegation that she was replaced by African-Americans significantly younger than she is not a legal conclusion, but a factual allegation that must be taken at the motion-to-dismiss stage as true.").

Because Plaintiff includes Defendant's proffered reasons for the termination within the allegations of his Complaint, and because the burden of persuasion remains on Plaintiff at all times, even where he seeks to make his case via the *McDonnell Douglas* framework, it is appropriate to consider whether Plaintiff has adequately alleged facts that, taken as true, would demonstrate that Defendant's proffered reasons for its actions were mere pretext. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) ("The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action." (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 176 (2009)); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." (quoting *Iqbal*, 556 U.S. at 1951-52)); *Jaffe*, 2021 WL 4220356, at *3 ("[W]hile the pretext analysis is an essential component of

the *McDonnell Douglas* framework at the summary judgment stage, that analysis is perhaps more out of place than the *prima facie* case at the motion to dismiss stage…. Even so, the court finds that [the plaintiff] plausibly rebuts two of the [three] offered reasons at this early stage.").

Plaintiff alleges that, around the time of his emergency room visit for pain related to an arthritic hip, Superintendent Taylor "contacted the plant nurse" with her "concerns" about Plaintiff being "bent at the waist." (Doc. No. 1 at ¶ 12.) Therefore, when Plaintiff reported to work two days after his emergency room visit, he was instructed to present additional medical documentation before he would be allowed to return to duty. (*Id*.) He twice submitted requested medical records to prove he was fit to return to work, but when he presented the requested paperwork, the plant nurse turned him away both times and finally instructed him to take a fitness test for lifting forty to one hundred pounds. (*Id.* at ¶¶ 13-15.) After Plaintiff provided documentation that he passed the test, the nurse allowed him to return to work. (*Id*. at ¶ 16.) When Plaintiff returned to duty, Superintendent Taylor assigned him a new workstation with new responsibilities, but that same day, when Superintendent Taylor overheard him asking another employee for directions to his new station after he used the bathroom, she accused him of being confused[7] and demanded he follow her to go see the nurse to be "checked out." (*Id*. at ¶¶ 18-23.) Though Plaintiff

---

[7] Viewing Plaintiff's allegations in the light most favorable to him, it is notable that Plaintiff's emergency room visit and Superintendent Taylor's previously-voiced concerns regarding him being "bent at the waist" involved Plaintiff's hip and physical condition, not his cognitive functioning. Within the context of all the Complaint's allegations, this fact could contribute to a reasonable inference that Superintendent Taylor's stated concern about Plaintiff's ability to safely work due to a cognitive functioning issue was baseless, manufactured, and pretextual.

explained that he was not confused and merely asked directions because he wanted to return to work by the fastest route, Superintendent Taylor took him to the break room and told him to sit down. (*Id*. at ¶¶ 25-26.) Plaintiff explained that he did not want to sit down and was fine and wanted to return to work; however, when Superintendent Taylor threatened him with security and/or police, he did sit down. (*Id*. at ¶¶ 27-31.) As noted, Plaintiff also alleges that younger employees who engaged in the same or similar conduct were not terminated. (*Id*. at ¶ 38.)

Viewed in the light most favorable to Plaintiff, if found to be true, these allegations would be sufficient to support a reasonable factfinder's conclusion that Defendant made several pretextual attempts to use manufactured medical reasons to turn Plaintiff away from his job; then, characterizing as "insubordinate" his resistance to cooperating with a further attempt to pretextually medically discharge him, Defendant pretextually discharged him for insubordination. Defendant argues in essence that other reasonable inferences could be drawn from these allegations (Doc. No. 16 at 5-6), but it is not for the Court to weigh competing inferences at the motion to dismiss stage. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (holding that, in ruling on a motion to dismiss, the court "must 'view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true'" (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007)).

In short, the allegations in the Complaint taken as true would support a reasonable factfinder's conclusion that discrimination was the but-for cause of Plaintiff's termination. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–33, 1335-36 (11th Cir. 2013) (reaffirming the

post-*Gross* utility of the *McDonnell Douglas* framework in ADEA cases at the summary judgment stage, while also noting that *McDonnell Douglas* is not the only method by which ADEA plaintiffs may make a *prima facie* case; an ADEA plaintiff may prevail if he proves that discriminatory animus was the "but-for" cause of the adverse action, *i.e.*, that the discriminatory "animus ha[d] a determinative influence on the employer's adverse decision").

### VI.    Conclusion

For the reasons stated above, it is ORDERED that Defendant's motion to dismiss (Doc. No. 7) is DENIED.

Further, by operation of the terms of the January 4, 2023 Order (Doc. No. 17), the stay of this case is LIFTED.

DONE this 3rd day of February, 2023.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE